IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| STEPHANIE TARA MCCAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **4:11-cv-2756-AKK** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Stephanie Tara McCain ("McCain") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

**I. Procedural History**

McCain filed her application for Title II disability insurance benefits on October 23, 2007, alleging a disability onset date of May 15, 2005. (R. 98).

McCain alleges that she is unable to work due to leg pain and instability that causes her to fall, bi-polar, and schizophrenia. (R. 124). After the SSA denied her application on December 10, 2007, (R. 61), McCain requested a hearing on January 10, 2008, (R. 72), which she received on September 16, 2009, (R. 34). At the time of the hearing, McCain was 38 years old, (R. 39), had a high school diploma, *id.*, and past relevant work that included sedentary and semi-skilled work as a receptionist, medium and unskilled work as a seat assembler, light and unskilled work as a break manufacturer, and light and semiskilled work as a general office clerk, (R. 54-55). McCain has not engaged in substantial gainful since her onset date of May 15, 2005. (R. 18).

The ALJ denied McCain's claims on January 13, 2010, (R. 13), which became the final decision of the Commissioner when the Appeals Council refused to grant review on June 2, 2011, (R. 1). McCain then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, McCain alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to</u>

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

<u>produce additional, objective proof of the pain itself</u>.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

The ALJ initially determined that McCain had not engaged in substantial

gainful activity since her alleged onset date, and therefore met Step One. (R. 18). Next, the ALJ acknowledged that McCain's severe impairments of "L5-S1 radiculitis on the right and chronic back pain status post three back surgeries," depression, and anxiety met Step Two. *Id*. The ALJ then proceeded to the next step and found that McCain did not satisfy Step Three since she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that through her date of last insured, McCain

> had the RFC [residual functional capacity] to perform sedentary work [ ] except that, due to her moderate pain and moderate psychological limitations, she was able to lift up to 10 pounds on a regular basis and able to occasionally lift more, was able to walk for up to 30 minutes at a time, stand up to 15 minutes at a time, and sit up to an hour with a sit/stand option, was able to drive short distances, and was able to respond to things in shorter periods of time.

(R. 20). The ALJ held further that McCain's impairments could reasonably be expected to cause the alleged symptoms, but that McCain's "statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment because (1) falls that caused "flare ups" in McCain's back pain occurred after the

expiration of her disability insurance benefits and (2) McCain's November 2005 MRI showed no evidence of disc herniation, spinal stenosis, or neural compression. (R. 28). In light of McCain's RFC and exertional limitations, the ALJ found McCain "capable of performing past relevant work as a receptionist." (R. 29). Because the ALJ answered Step Four in the negative, she determined that McCain is not disabled. (R. 29).

## V.  Analysis

The court turns now to McCain's contentions that the ALJ improperly applied the pain standard by failing to consider the evidence regarding McCain's complaints of pain, and failing to apply the proper weight to her treating physician's opinion. Doc. 8 at 7-8. For the reasons stated below, this court finds that the ALJ's opinion is supported by substantial evidence.

A.   *The ALJ properly considered the evidence regarding McCain's pain.*

In a nutshell, the ALJ rejected McCain's claim because the ALJ found that McCain's "statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." (R. 28). Specifically, the ALJ discredited McCain's complaints of pain because, prior to the expiration of her disability benefits, McCain had no falls that exacerbated her back pain and McCain's November 2006 MRI "showed no

evidence of disc herniation, spinal stenosis, or neural compression." *Id*.

Based on the record before the court, McCain's back problems began as early as May 27, 2003, when an MRI revealed "right paracentral [herniated nucleus pulposus] with somewhat pedunculated appearance of the herniation," and "focal central protrusion of the disc at L4-5." (R. 545). Two years later, in April 2005, McCain sought treatment at Rapid Care Clinic for "back problems." (R. 250). The treating physician ordered an MRI of McCain's lumbar spine, *id*., which revealed "right paracentral and lateral disc extrusion L5-S1." (R. 257). As a result, the physician referred McCain to neurosurgeon Dr. Terry Andrade ("Dr. Andrade"), (R. 249), whom McCain initially visited on May 10, 2005, complaining of low back and right leg pain. (R. 184). Dr. Andrade found a positive straight leg raise producing pain, lumbar spine muscle spasms bilaterally in the "paraspinous muscles of moderate intensity," and moderately limited lumbar spine flexion with "production of radicular pain present into the right lower extremity only." (R. 186). The next day, McCain received a discectomy and right hemilaminectomy at L5-S1 that improved her pain initially, "but the improvement didn't last [and the pain] recurred." (R. 187). Dr. Andrade prescribed physical therapy and a Duragesic patch for pain. (R. 189).

McCain visited Dr. Andrade again on May 24, 2005, complaining of "low

back and right leg pain," (R. 190), and Dr. Andrade ordered another MRI, (R. 192), which revealed "displacement of lumbar intervertebral disc without myelopathy" and "thoracic or lumbrosacral neuritis or radiculitis," (R. 195).  Three days later, McCain again received a discectomy and right hemilaminectomy, and on June 7, 2005, Dr. Andrade noted overall pain improvement, (R. 196), but that straight leg raises elicited pain on the right side and bilateral muscle spasm in the lumbar spine, (R. 197).  Dr. Andrade prescribed Daypro for arthritis, physical therapy, smoking cessation, and weight loss.  (R. 198).  Dr. Andrade evaluated McCain again on June 23, 2005, and noted that McCain's pain improved initially after her surgeries but that "the improvement didn't last."  (R. 199).  Dr. Andrade ordered a nerve conduction study, (R. 201), which revealed "sciatica, thoracic or lumbosacral neuritis or radiculitis," (R. 204).

The next month, on July 12, 2005, Dr. Andrade noted slight improvement in McCain's pain, (R. 202), and prescribed Cyclobenzaprine HCl for muscle spasms and Lorcet for pain, (R. 204).  Thereafter, on July 26, 2005, contrary to the ALJ's contention that McCain did not fall prior to the expiration of her disability insurance benefits, Dr. Andrade evaluated McCain for a fall that triggered increased back pain.  (R. 205).  Dr. Andrade observed that McCain expressed low back pain during lumbar flexion and scheduled a follow up MRI.  (R. 206-207).

Two days later, McCain returned to Dr. Andrade complaining again of back and leg pain and Dr. Andrade scheduled a laminectomy, facetectomy, and foraminotomy, which McCain received on August 1, 2005. (R. 210). McCain presented again to Dr. Andrade after her surgical procedures and Dr. Andrade noted slight improvement on McCain's pain radiating into her right lower extremity, that McCain's lumbar pain and disc herniation were resolved, and that McCain had no muscle spasms or tenderness in her lumbar spine or muscle spasms in her thoracic spine. (R. 211-212). Dr. Andrade commented further that McCain's lumbago and lumbosacral spondylosis without myelopathy were "stable or improved." (R. 213).

On September 6, 2005, Dr. Andrade described McCain's lumbar pain as "resolved" and McCain as "greatly improved." (R. 214). A month later, on October 4, 2005, Dr. Andrade described McCain again as "greatly improved," (R. 217), and scheduled an MRI and lumbosacral x-ray, (R. 219), which revealed "no evidence of reherniation," lumbago, and sciatica. (R. 222). Two days later, Dr. Andrade's notes provide that McCain is "greatly improved" and that her lumbar pain is resolved. (R. 220).

On November 3, 2005, McCain visited Dr. Andrade complaining that she was "some what worse after picking up her kids" despite the improvements in her

condition. (R. 223). Dr. Andrade prescribed Escitalopram Oxalate for pain and recommended that McCain cease smoking, continue physical therapy and home exercises, and return in one month. (R. 225).

On December 1, 2005, McCain visited Rapid Care requesting something for her back pain and was scheduled for an epidural injection. (R. 241). That same day, McCain returned to Dr. Andrade, who described McCain's lumbar pain as resolved and stated that McCain continued to improve. (R 226). Dr. Andrade scheduled McCain for a CT of the lumbar spine, which revealed "mild disc bulges without significant impingement of neural elements," a electromyelogram that revealed "mild right equivocal changes L5 nerve root," and a nerve conduction study that was normal bilaterally for the motor/sensory nerves but revealed "questionable positive waves at L5 which is consistent with an L5/S1 radiculitis on the right." (R. 228-29, 277). Two weeks later, on December 13, 2005, Dr. Andrade evaluated McCain and noted that (1) "there has been no change in location, quality, severity or timing" of McCain's pain, (2) "straight leg raising is asymptomatic bilaterally. Sciatic notch tenderness is absent bilaterally," (3) the thoracic and lumbar spine are without muscle spasms and tenderness, and (4) lumbar spine flexion was "mildly limited with production of low back pain present in the midline." (R. 231). Two days later, McCain returned to Rapid Care

complaining that her epidural injection caused no improvement in her back pain and she was referred to a neurosurgeon. (R. 240). The record is unclear about whether McCain visited the neurosurgeon. *See* R. 239.

Lastly, on February 7, 2006, McCain visited Marshall Medical Center South Emergency Department for back pain and claimed that her sister stole her pain medication. (R. 503). The treating physician noted that McCain presented with vertebral-point tenderness and a decreased range of motion in her back. (R. 502). The physician prescribed McCain Demerol and other pain medications and discharged McCain in improved and stable condition. (R. 505).

A review of the objective medical evidence reveals that McCain does not meet the pain standard because her underlying condition is not so severe that it can be reasonably expected to produce the alleged pain. Specifically, the laminectomy, facetectomy, and foraminotomy McCain received on August 1, 2005, proved effective in treating her pain because Dr. Andrade noted subsequently that McCain's pain was either resolved, slightly improved, or greatly improved and that her muscles spasms had ceased. Importantly, McCain's October 2005 MRI revealed no reherniation. Further, McCain's December 2005 CT scan showed only mild disc bulges, the electromyelogram revealed mild nerve root changes, and the conduction study was only questionable regarding waves

consistent with radiculitis. Based on this court's review of the record, the objective medical evidence shows primarily mild impairments and no existence of an underlying medical condition that the ALJ could reasonably expect to produce disabling pain. *See Holt*, 921 F.2d at 1223. Moreover, the objective tests McCain received are inconsistent with McCain's allegations of disabling pain. Therefore, the ALJ's finding that McCain's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible is supported by substantial evidence.

As it relates to the ALJ's finding that none of McCain's falls occurred prior to her date last insured of March 31, 2006, (R. 28), the court disagrees and finds that McCain's July 2005 fall occurred prior to the expiration of her disability insurance benefits. However, the fall occurred prior to McCain's August 2005 surgeries which the record shows proved effective in treating her pain. Therefore, to the extent that the ALJ relied in error on her finding that McCain did not suffer any falls before March 31, 2006, to demonstrate McCain's lack of credibility, that error was harmless because the ALJ's credibility finding is otherwise supported by substantial evidence, as discussed above.

B.   Dr. Moon

Finally, McCain contends that her pain testimony is "corroborated by the

treatment records of her pain doctor," Dr. Tai Young Moon ("Dr. Moon"). Doc. 8 at 7. However, Dr. Moon began treating McCain in November 2006, eight months after McCain's date last insured of March 31, 2006. *See* R. 300-341; *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Therefore, Dr. Moon's treatment notes are not helpful in determining disability during the relevant time period.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Fuller is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 10th day of August, 2012.

                                                            _____
                                                            **ABDUL K. KALLON**
                                                            UNITED STATES DISTRICT JUDGE